# Lewis *v.* Lee County.

*Action on Official Bond of County Treasurer.*

1. *Who is proper party plaintiff.*—An action on the official bond of a county treasurer, after the expiration of his term of office, or removal from office, may be brought in the name of the county as the "person aggrieved" (Code, § 2917), even if his successor in office might also sue; and the fact that the bond is made payable to the State, instead of the county (*Ib.* §§ 842, 181), does not affect the principle.

2. *County treasurer's liability for taxes collected to pay interest on railroad bonds.*—Moneys collected by the county treasurer by way of taxes to pay the interest on railroad bonds, issued by the county under the general law approved December 31st, 1868, by which counties, cities and towns were authorized to subscribe to the capital stock of railroad companies (Sess. Acts 1868, p. 514), are moneys belonging to the county, which it is his duty to receive, keep and disburse, according to law; and the sureties on his official bond are liable for any default in regard to such moneys.

3. *Duplicity.*—A complaint is not demurrable for duplicity.

4. *Objection to evidence admissible against one of several defendants.*—In an action against two or more defendants, admissions made by one of them, or other evidence admissible against one only, can not be excluded from the jury, on motion of the others: their proper (and only) remedy is by a request for instructions to the jury, limiting its effect; but the better practice is to limit its operation at the time the evidence is admitted.

[Lewis v. Lee County.]

5. *Money collected by county treasurer, and lost without fault, through order of Commissioners Court.*—The county treasurer and his sureties are not liable for "State money" collected by him, and delivered to the probate judge, by order of the Commissioners Court, in order that it might be exchanged for United States currency, and which was lost by the death and insolvency of the probate judge. The Commissioners Court has authority to make such an order, and, if given verbally, to ratify it by an order subsequently entered of record.

APPEAL from the Circuit Court of Lee.

Tried before the Hon. JAMES E. COBB.

This action was brought by Lee county, suing as a corporation, against John F. Lewis and the sureties on his official bond as county treasurer of said county; and was commenced on the 6th September, 1875. The bond was dated the 18th November, 1871; was in the penalty of $30,000, payable to the State of Alabama; recited the election of said Lewis as county treasurer, and was conditioned as follows: "Now, if the said John F. Lewis shall faithfully discharge the duties of said office during the time he continues therein, or discharges any of the duties thereof, then the above obligation to be void," &c. The complaint alleged the execution of this bond, setting it out at length, and that said Lewis acted under it as county treasurer; and assigned the following breaches of the condition: 1. That the said Lewis, as county treasurer, received from the tax-collector of the county moneys belonging to the plaintiff, amounting to $10,000, "which he has failed to pay over and account for to said plaintiff, or to his successor in office, at the expiration of his term of office, or to any one authorized by law to receive it, and which it was his official duty, as such county treasurer, to do." 2. "That it was the duty of said Lewis, as such county treasurer, to receive from the tax-collector of said county the taxes collected to pay the interest on the bonds issued by said county to the Savannah and Memphis Railroad Company, and to the Eufaula, Opelika, Oxford and Guntersville Railroad Company; that he did, as such treasurer, receive of said amount, while he was discharging the duties of such office, the sum of $25,000, which he has failed to pay over and account for to plaintiff." 3. "That said Lewis, as such treasurer, received taxes due the plaintiff, as was his official duty as such treasurer, to the amount of $30,000, and has failed to pay over and account for said money."

At the bottom of the complaint, as copied in the transcript, following the signature of the attorneys and the security for costs, are two additional assignments of breaches, also signed by plaintiff's attorneys, as follows: "3. For further breach of said bond, said plaintiff avers, that said Lewis, while acting under said bond, as the county treasurer of said county, did receive from the tax-collector of said county, and from

(31)

other sources, various sums of money belonging to said county, which it was legal for said Lewis to receive as such county treasurer, and all of which said plaintiff avers went into his hands as such county treasurer, and which it was legal for him as such county treasurer to receive, and which did belong to and constitute a part of the moneys of Lee county, to the amount of $20,000 ; which said moneys said Lewis, as said county treasurer, did not pay out on any legal claim against said county, nor which has he in any manner accounted for, either to his successor, D. N. Hudmon, or any other person ; and plaintiff avers that said Lewis has gone out of office, the said office having been terminated by expiration of the same, and the same having been filled by D. N. Hudmon, who was the successor of said Lewis ; but plaintiff says, that said Lewis still holds the said money in his hands, unaccounted for, or has long since converted the same to his own use." 4. "That said Lewis, as county treasurer of said county, after he had made and executed said bond, and while he was acting under said bond, received from the tax-collector of said county $10,000, moneys collected by said collector on an assessment made by the Court of County Commissioners of said county to pay the coupons and interest due on the bonds of said county given to the Savannah and Memphis Railroad Company, and to the East Alabama and Cincinnati Railroad Company, for subscription to the capital stock of said railroads, under the act approved December 31st, 1868, entitled 'An act to authorize the several counties, towns and cities of the State of Alabama, to subscribe to the capital stock of such railroads throughout the State as they may consider most conducive to their respective interests.' And plaintiff avers, that said sum so received by said Lewis, as treasurer as aforesaid, was collected by the tax-collector of said county, under assessments made by said Court of County Commissioners, for the years 1871, 1872, 1873, 1874, and 1875, and was by said court ordered to be paid over by said collector to said Lewis, the county treasurer ; and that said Lewis, as such county treasurer, did receive said sums of money in his official capacity as such treasurer, which did belong to said county, and that he has wholly failed to account for said money, or to pay the same to any one according to law. Plaintiff avers, also, that said Lewis went out of office before the commencement of this action, his term of office as county treasurer having expired ; and that D. N. Hudmon had, before that time, become his successor, and had duly qualified as such treasurer ; and that said Lewis has never accounted to said successor for said money so belonging to said county, or to any one legally authorized to

receive the same from him, as required by section 933 of the Revised Code."

The defendants demurred to the complaint, assigning several causes of demurrer. To the entire complaint, it was assigned as ground of demurrer, that it showed no cause of action in the plaintiff, but that the action should have been brought in the name of the successor of said Lewis as county treasurer; to the first assignment of a breach, with other matters, that it was bad for duplicity; to the second assignment, that it was double, and that it showed no liability to the county for the money collected to pay the interest on the railroad bonds; and "to the last breach, all the grounds specified as to the first." The court sustained the demurrer, and the complaint was then amended, "by adding the following complaint: And the plaintiff avers, that the condition of said bond has been broken in this: that said Lewis, as such county treasurer, and while so acting as such county treasurer, received money from the tax-collector of said county, belonging to the plaintiff, amounting to the sum of $10,000, which, after the expiration of his term of office, he has failed to pay over and account for to his successor in office, D. N. Hudmon, county treasurer of Lee county, or to pay out to any creditor of said county said sum of money, as it was his official duty to do; and he still refuses so to pay out or to pay over said money, and still retains the same," &c.

To the complaint as amended, the defendants again demurred, assigning "the same grounds already assigned to the original complaint, and the following grounds: 1. The complaint, as amended, does not state or aver that said Lewis had any money in his hands of the plaintiff's at the expiration of his term of office. 2. It does not aver that the term of office of said Lewis had expired at the commencement of this suit, or that it has ever expired. 3. It does not state who was the successor of said Lewis, or that he was not his own successor. 4. It fails to state that said Lewis, while county treasurer, or while acting as such, did not pay out all the moneys in his hands belonging to plaintiff, to persons entitled to receive the same." The rulings of the court on the pleadings are thus stated in the judgment-entry: "Came the parties," &c., "and the defendants demurred to the complaint; which demurrer, being considered by the court, *is sustained*; and the plaintiff asked leave to amend his complaint, which leave is granted, and the complaint amended accordingly; and the defendants demurred to the amended complaint, which demurrer, being considered by the court, *is overruled, except as to fourth assignment of breach, as to which the demurrer is sustained.*"

The bill of exceptions states, that "issues were formed upon the pleadings, as shown by the record." The pleas copied into the transcript are in these words : " 1. Defendants say, that said Lewis has not broken any of the conditions of said bond sued on. 2. As to the first breach alleged, they say, that he made no failure in paying over to his successor as county treasurer of said county, said Hudmon, nor accounting with him, during the period of time within which he, said Lewis, continued to be county treasurer, or performed any of the duties thereof. 3. As to the second breach alleged, and which relates to railroad taxes, these defendants answer—1st, that there was no such law as is stated by plaintiff in said second breach alleged ; 2d, that he did not receive as such treasurer the amount mentioned in said second breach alleged, or any part thereof, while he continued in the office of county treasurer, or while he was discharging any of the duties thereof ; 3d, that while said Lewis was county treasurer, or continued in said office, or discharged any of the duties thereof, he made no failure in paying over to the county treasurer who succeeded him, D. N. Hudmon, all moneys in his hands as county treasurer. And for further answer to the third assignment of breach, the defendants say : 1st, that said Lewis never received taxes to the amount of $30,000, as alleged ; that he never made any failure to pay over to his successor in office, nor to account with him, during the period within which said Lewis continued in the office of county treasurer, or discharged any of the duties thereof ; 2d, that said Lewis has paid to, and accounted with plaintiff, for all the moneys he owed plaintiff. And for further answer defendants say, that said Lewis, while county treasurer of Lee, paid out and disbursed all the moneys of Lee county received by him as such treasurer, according to law ; that on a just and correct account between said Lewis, as county treasurer, and said county of Lee, there is nothing in his hands due said county. And defendants plead, in short by consent, payment and set-off ; that said Lewis has paid to plaintiff, or to its order, or in accordance with its directions, all its moneys ever received by him as county treasurer." Issue seems to have been joined on these several pleas.

" On the trial," as the bill of exceptions states, " there was evidence tending to show that, after the expiration of the term of office of said Lewis, and after his successor had been elected and qualified, but before any settlement had been made by said Lewis of his accounts as county treasurer, and pending an effort for such settlement with the Commissioners Court of the county, and after a committee, appointed by

said court for that purpose, had examined, with said Lewis, his accounts and vouchers, and had prepared a report of their action, said Lewis was not satisfied with said report, and desired the appointment of a committee of expert book-keepers to examine his accounts and vouchers; and that such committee was appointed, and entered upon the discharge of the duties requested of them. T. S. Frazer, one of said last named committee, was called as a witness for plaintiff, and testified, that he had a conversation with said Lewis, in the office of D. N. Hudmon, in Opelika, where they had gone to see the books, about the condition of his books as county treasurer. Said witness was then asked by plaintiff to state what said Lewis said to him, if anything, about his books, or about his indebtedness to said county as treasurer, and to state all that occurred between them, in regard to this matter. Said witness, in reply, proceeded to detail certain declarations, then and there made to him by said Lewis, to the effect that he was still indebted to said county as such treasurer; and further, that said Lewis said, *he had examined the additions, account, &c., made by said committee,* referring to said committee appointed by the Commissioners Court, *in their report, and that they were correct with the exception of the bank account.*" The several defendants who were sureties on the bond of said Lewis, objected to this question, and to each part of the answer, as to the declarations or admissions of Lewis. The objections to the question were, "that it sought to make evidence of the statements of said Lewis as to past transactions, and after he had ceased to be county treasurer, as against the sureties on his bond, and because it called for illegal and irrelevant evidence;" and the objections to each part of the answer were, "that it was illegal, irrelevant, and improper as against said defendants, and was hearsay, and was an attempt to make evidence out of the mere opinion of said Lewis." The court overruled the objections, and admitted the evidence; to which several rulings the sureties duly excepted.

"The plaintiff introduced as evidence the report made by the committee appointed by said Commissioners Court"; to the introduction of which as evidence, "the said defendants severally objected, because the same was illegal, irrelevant, and hearsay; but the court overruled their objections, and permitted said report to go to the jury, and the defendants severally excepted." There were three items in this report, for $1,476, $189, and $800, respectively, which were contro-verted; and said Lewis, who was introduced as a witness for the defendants, thus testified in reference to them: "That said item of $1,476, with which he was charged in said re-

port, was not received by him in money, but was received in coupons of the Savannah and Memphis railroad bonds, which were worth about forty cents on the dollar; that they were received from W. H. Barnes, in payment of some money which he had collected for the county; that he had taken said coupons from said Barnes by the direction of the County Commissioners, and had the same in court, and offered them as evidence in the cause; also, that the item of $189, with which he was charged, was received by him from Dr. Thornton, not in money, but in similar coupons to those above described, in payment of a debt to the county for hire of convicts by said Thornton, and he had said coupons in court, and offered them as evidence; and that he was erroneously charged with $800 in State money, which he had handed to Judge Read, probate judge of said county, to be changed into 'Greenbacks,' under the following circumstances: At a regular term of the Commissioners Court, in open court, the members of said court directed him, he then being present, to hand to said Judge Read, then present and presiding, $800 in State money, in order that he might exchange it in Montgomery, where he was soon going, for 'Greenbacks'; and witness handed said $800 to Judge Read, who went to Montgomery, and returned, but died a few days afterwards, without returning the money, or any part thereof, to witness; that the estate of said Read was insolvent, and witness could not collect said money from said estate." This order of said Commissioners Court was given verbally, and no entry of it was made of record; but, after the death of said Read, an order was made and entered by the court, which, after reciting the facts as above stated, proceeded thus: "It is therefore ordered by this court, that said claim against said Read be prepared both by said Lewis and said county, and filed as claims against said estate; and should the said Lewis have to prosecute said claim against said estate, it is the duty of this court to hold him harmless, and it will do so." The plaintiff "moved the court to exclude all that part of the statement and evidence of said Lewis in regard to said $800, and its delivery to said Read, and his failure to return it; which motion the court sustained, and excluded said evidence, and the defendants excepted." There was no objection, so far as the bill of exceptions shows, to any other part of the testimony of said Lewis, or to the admission of said order of the Commissioners Court.

W. H. Barnes testified, on behalf of the plaintiff, "that he paid $1,476 to said Lewis, in coupons of said railroad bonds, as stated by said Lewis; that, before he did so, he went to the Commissioners Court, then in session, and they made an

order for said Lewis to receive said coupons instead of money due from witness to the county; that said order was verbal only, but the court was in session." The defendants objected to the testimony of this witness, "and especially to the statement that said court had made an order, directing said Lewis to receive coupons from him in lieu of money, because the same was illegal and irrelevant, and there was no legal proof of any order or decree of said court; and because said court had no authority to make such order." The court overruled these objections, and refused to exclude the evidence; and the defendants excepted. "Said witness further testified, that Lewis was not present when said order was made; and that Lewis told him, he had on hand, as county-treasurer, money collected of the special railroad tax, and which was assessed and collected to pay the coupons of said Memphis and Savannah railroad bonds, enough to pay the said $1,476 of coupons held by witness." To this statement of said witness defendants objected, and moved to exclude the same from the jury, "on the ground that said statement was illegal, irrelevant, and would tend to mislead the jury; which motion the court overruled, and refused to exclude said statement as evidence, and defendants excepted." The bill of exceptions contains this statement, as to said coupons and bonds: "The bonds herein designated as Savannah and Memphis railroad bonds, were bonds issued by said county of Lee, under authority of an act of the legislature approved December 31st, 1868, in aid of the Savannah and Memphis railroad, and were interest-bearing, with coupons past due, and payable by Lee county, out of a special fund for that purpose provided in the act authorizing the issue of the bonds; and this appeared on the trial."

The adverse rulings of the court on the pleadings and evidence, as above shown, and in the charges given to the jury (which it is not necessary to set out), are now assigned as error.

GEO. D. & GEO. W. HOOPER, and GEO. P. HARRISON, for appellants.

WM. H. BARNES & SON, and W. J. SAMFORD, contra.

SOMERVILLE, J.—This is a suit on the bond of the appellant Lewis, as treasurer of Lee county, brought against him and his sureties, and is instituted in the name of the county, as "the person aggrieved," within the meaning of section 2552 of the Revised Code, now composing section 2917 of the Code of 1876. The bond is payable to the State

of Alabama, and not to the county, as required by section 923 of the Revised Code.—Code of 1876, § 842. But this defect is cured by the provisions of section 171 of the Revised Code (Code, 1876, § 181) which gave to the "person aggrieved" all the remedies which he might have maintained on a regular statutory bond, in all cases where the officer executing such informal bond has *acted under it*, as is averred to be true in this case.—*Sprowl v. Lawrence*, 33 Ala. 674.

The complaint is demurred to, among other reasons, on the ground that, the treasurer's term of office having expired, the suit should have been in the name of his successor, who is shown to have been elected; that he is the party *aggrieved*, because it is to him that the treasurer is required by the statute to "deliver all the money, books, papers, and property of the county," in case of the former's resignation, the expiration of his term, or his removal from office.—Rev. Code, § 933; Code of 1876, § 850. It may be, that the treasurer's successor in office could have sustained the suit, as a party plaintiff, and is a "person aggrieved" within the provision of the statute, in as much as he is authorized by law to receive the money from his predecessor.—*Morrow v. Wood*, 56 Ala. 1. But the treasurer is, after all, the mere agent of the county, appointed by law as the custodian of its moneys; and the county is the principal, who is both the legal and beneficial owner of such moneys, having control, through the agency of the Court of County Commissioners, of all property belonging to the county, of every description whatever.—Code of 1876, § 817. The county of Lee was, therefore, the proper party plaintiff in this action.

It is further insisted, by way of demurrer, that it was not the duty of the defendant, Lewis, to receive any money collected by way of taxes to pay the interest on the railroad bonds. It does not appear otherwise than that the bonds were issued by the county of Lee under the provisions of the general law authorizing counties, towns and cities in this State to subscribe to the capital stock of railroads, approved December 31, 1868.—Sess. Acts 1868, p. 514, No. 172. Taxes, assessed and collected under this act, would be money of the county, which it was the duty of the treasurer to receive and keep, and for the faithful disbursement of which his sureties would be liable. It does not appear that there is any special law taking the case out of the operation of the general law. Code (1876), § 845; Rev. Code, § 926; Acts 1868, p. 516, § 7.

It has been repeatedly held by this court, that *duplicity* in the allegations of a complaint, or in statements of a plea, is, under our system of pleading, no ground for demurrer, except as to pleas in abatement. This defect was, at common

law, the subject of special demurrer; and special demurrers are now abolished by statute, except, in effect, as to dilatory pleas. A redundancy, whether of good or bad matter, will not now vitiate.—2 Brick. Dig. p. 333, §§ 55–6 ; *Ib*. 334, § 69. There was no error in overruling the demurrer to the amended complaint.

The witness Frazer's testimony, as to his conversation with the defendant Lewis, regarding the condition of his accounts as county treasurer, was properly admitted in evidence. It was certainly good as an admission against him, and could not be excluded because not admissible against the sureties, who were his co-defendants in the action. The practice on this point is well settled in this State, that the only remedy of a co-defendant, in such a case, is to request a charge from the court to the jury, limiting the operation of the evidence, so as to confine its influence only to the defendant against whom it is admissible. The safer and better practice, however, would be to limit its operation at the time of admission, so that the jury may not be misled during the progress of the argument.—*Goodman v. Walker*, 30 Ala. 482; 1 Brick. Dig. 810, §§ 98–99. So, of Lewis' admission to Barnes, as to the amount he had collected of the "special railroad tax," and of the report made by the committee appointed by the Commissioners Court to examine the treasurer's accounts, which was admitted by Lewis to be "correct with the exception of the *bank account*." What was meant by this exception, is a proper subject of parol explanation. The sureties should have raised their objection to the admission of this evidence, as against themselves, by requesting a proper charge touching the matter.

The item of $1,476, received in coupons of the Savannah and Memphis railroad bonds, was properly charged to the treasurer, at their par value. They were received from Barnes, by direction of the Commissioners Court, in lieu of certain moneys collected by him for the county of Lee. It would be immaterial whether there was a record made of the matter or not, as no one could be prejudiced by this fact. If Lewis was charged with this item, and also the one of $189, received in coupons from Thornton, he was entitled to a *credit* for each of them on the settlement of his accounts, on the production of the vouchers and proof of these facts. This was a matter relating only to the *form* of stating the account. In this view of the case, it becomes unnecessary to rule on the correctness of the two charges given by the court on these two items.

The court erred, however, in excluding from the consideration of the jury the statement of the defendant Lewis, de-

[Dunbar v. Smith.]

posed to by him as a witness in the cause, in regard to the item of $800 "State money" delivered by order of the Commissioners Court to the probate judge, in order that he might have it changed into currency. The money was lost, by reason of this act; Read, the probate judge, subsequently becoming insolvent. He was thus constituted the special agent of the county, for this particular purpose, and the subsequent entry of the order on the record, among the court minutes, was a legal ratification of the informal authority as first given. The commissioners possessed the authority to make this order, very clearly, by virtue of their statutory duties.—Code (1876), §§ 746, 817; Rev. Code, §§ 832, 899.

For this error, the judgment of the Circuit Court is reversed, and the cause is remanded.